UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JIAYI GENG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-03139-JPH-MPB |
| | ) |
| THOMAS W. HARKER Acting Secretary of the Navy,[1] | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Jiayi Geng was suspended from her job with the Navy and was not admitted into a combat-support deployment program. She then brought this lawsuit *pro se* alleging that she was discriminated and retaliated against and was subjected to a hostile work environment. *See* dkt. 1; dkt. 33. Defendant has filed a motion for summary judgment. Dkt. 45. For the reasons below, that motion is **GRANTED**.

## I.
## Facts and Background

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

---

[1] Acting Secretary of the Navy Thomas W. Harker has been substituted for Secretary of the Navy Richard V. Spencer. Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

### A. Ms. Geng's employment and disciplinary history

The Navy hired Ms. Geng, a native of China, in 2010 as an engineer working primarily for the Expeditionary Electro-Optics Branch (abbreviated "JXQR") at Crane Naval Service Warfare Center in Crane, Indiana. Dkt. 45-1 at 9–10, 12, 16 (Geng Dep.); *see* dkt. 45-8 at 1. In that role, she acted as liaison for defense contractors, drafting and updating technical specifications for electro-optics equipment. Dkt. 45-1 at 12, 21, 115–16 (Geng Dep.). Ms. Geng has an MBA and a graduate degree in electrical and computer engineering. *Id.* at 9–10.

During her employment, Ms. Geng was required to follow the Navy's Timekeeping, Payroll, and Labor Distribution Policy and Procedures ("Timekeeping Policy"). *Id.* at 42, 45; dkt. 45-3. The Timekeeping Policy required Ms. Geng to electronically record her time. Dkt. 45-3 at 5. She was also subject to the Navy's disciplinary procedures. Dkt. 45-1 at 22 (Geng Dep.); dkt. 45-4.

In December 2012, Ms. Geng went to a Christmas lunch organized by Shawn Graber, a program manager for the Navy. Dkt. 45-1 at 23–26, 175 (Geng Dep.). Ms. Geng waited for Mr. Graber to talk to her, but he didn't talk to her or look at her. *Id.* at 175–76. Ms. Geng found this condescending and believed that Mr. Graber was biased against her because of her race. *Id.* at 174–75, 177.

In 2014, Mr. Graber became the JXQR branch manager—Ms. Geng's immediate supervisor. *Id.* at 26–27, 38. In May 2015, Ms. Geng came to work

late, and Mr. Graber reminded her to file leave requests in advance. Dkt. 45-5. That July, he sent her the Timekeeping Policy and reminded her to "be[ ] at work during core hours or request[ ] the appropriate leave." Dkt. 45-6. The next month, in August 2015, he noted a discrepancy between her clock-in/out times and her timesheet and reminded her that the time she logs "must match what you actually worked." Dkt. 45-6. He added that "this is the 3rd discussion we've had on Timekeeping Policy and I want it to be our last." *Id.* In September 2015, Mr. Graber issued Ms. Geng a letter of reprimand after she slept in her car while on duty twice in August 2015. Dkt. 45-8. Ms. Geng did not deny sleeping either time. *Id.*; dkt. 45-1 at 46–47 (Geng Dep.).

In January 2017, Ms. Geng was stopped for speeding at Crane and was required to complete a driving improvement program. *Id.* at 48–49. She told Mr. Graber that she graduated the program, and he responded, "Hopefully they covered parking as well in your training yesterday. :)" with a picture of her car parked crookedly at Crane. *Id.* at 50–51; dkt. 45-9. Ms. Geng interpreted Mr. Graber's email as an "ethnic joke" "relying on a stereotype that Asians are poor drivers." Dkt. 45-1 at 51–52 (Geng Dep.).

**B. Three-day suspension and Ms. Geng's related complaint**

On June 1, 2017, Ms. Geng got to work shortly before 10:30 a.m., but recorded on her timesheet that she arrived at 8:30 a.m. Dkt. 45-1 at 57, 64 (Geng Dep.); dkt. 45-10. She then "insisted" to Mr. Graber that she was at her desk at 8:30 a.m. Dkt. 45-10 at 1. Mr. Graber proposed a three-day suspension to the Division Manager, Nova Carden, *id.*, and Ms. Geng

3

responded that she was at work at 8:30 a.m. on June 1, dkt. 45-11 at 1; dkt. 45-12. Ms. Carden imposed the three-day suspension, concluding that Ms. Geng inaccurately reported her time and then continued to falsely claim that she had been at work. Dkt. 45-13.

In September 2017, Ms. Geng filed a formal complaint alleging that her suspension was the result of discrimination and that she had been discriminated against many other times beginning in early 2013. Dkt. 45-14. During the Equal Employment Opportunity Commission ("EEOC") investigation, Ms. Geng admitted that she had arrived at about 10:30 a.m. on June 1, 2017. Dkt. 45-17 at 17. The EEOC's administrative judge entered judgment against Ms. Geng in January 2020, concluding that she had not shown that she was discriminated against. *Id.* at 1, 13.

### C. Fourteen-day suspension and Ms. Geng's related complaint

In July 2017, Mr. Graber emailed Ms. Geng about two status updates she had sent him about her work progress. Dkt. 45-24. He "reiterate[d] that if you are encountering obstacles that are preventing you from being productive then you need to let me know so that we can address them as it is your responsibility to let me know if you cannot complete your tasks in a reasonable time." *Id.* Mr. Graber then included "[b]e focused on completing assigned tasking in a timely manner" as an opportunity for improvement on Ms. Geng's November 2017 evaluation. Dkt. 45-25.

In March 2018, Mr. Graber asked Ms. Geng to begin using a "Task Tracker" to minimize having too many hours charged to her projects and to

4

help her prioritize her work. Dkt. 45-27; see dkt. 45-26 at 3. The "Task Tracker" identified the tasks Ms. Geng was responsible for, how many hours were authorized for each task, and how many hours she actually charged. Dkt. 45-28. In April 2018, after Ms. Geng spent seven hours in a week on "overhead" time for emails, breaks, and personal development, Mr. Graber told her that he felt that the time "may be excessive." Dkt. 45-29. And in May 2018, he told her that it was "unacceptable" that she was spending more than twice the employee-average amount of time updating documents, but still was not completing them. Dkt. 45-33.

On June 26, 2018, Mr. Graber proposed a fourteen-day suspension for inattention to duty, alleging that from April 2 to May 25, 2018, Ms. Geng spent 213.3 hours on tasks that had 112 hours allocated to them. Dkt. 45-36. After Ms. Geng responded, dkt. 45-37, Ms. Carden concluded that Ms. Geng was inattentive to duty and imposed the fourteen-day suspension, dkt. 45-38.

On September 27, 2018, Ms. Geng filed a formal complaint alleging that she was suspended based on her race, national origin, color, and gender, and in retaliation for previous EEO complaints. Dkt. 45-39.

### D. The Mobile Technology & Repair Complex program and Ms. Geng's related EEO complaint

The Mobile Technology & Repair Complex ("MTRC") program provides engineers and scientists with six-month deployments to "combat service support locations." Dkt. 45-19. Ms. Geng applied to the program "[m]aybe four" times, beginning in "2015 or maybe even earlier." Dkt. 45-1 at 76 (Geng

5

Dep.).  Ms. Geng was interviewed for the program the first time, but not after that.  *Id.* at 88–91.

In August 2017, Ms. Geng attended a "Women of the MTRC" event designed to encourage women to apply for deployment opportunities.  *Id.* at 92–93.  At the event, she asked questions that employees believed were related to military operations.  Dkt. 54-4 at 2–3; *see* dkt. 45-22.  That prompted an NCIS Officer to contact her.  Dkt. 54-4 at 2.  That October, Ms. Geng received an email inviting employees to volunteer for the MTRC program, dkt. 45-19, but she did not officially apply, dkt. 45-20 at 2.  In November 2017, however, she filed a formal complaint alleging that she was denied acceptance to the MTRC program because of her race and sex.  Dkt. 45-18.  On February 14, 2019, the Navy's Office of Equal Employment Opportunity issued its final decision concluding that she was not discriminated against.  Dkt. 45-23.

### E. Procedural history

Ms. Geng brought this action in July 2019.  Dkt. 1.  She alleges that (1) her fourteen-day suspension was based on discrimination and retaliation, (2) her interest in the MTRC program in August 2017 was not responded to because of discrimination and retaliation, and (3) she was subjected to a hostile work environment.  Dkt. 33 (amended complaint).  Defendant has moved for summary judgment.  Dkt. 45.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

6

judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

### A. Claims Related to Ms. Geng's Fourteen-Day Suspension

Ms. Geng alleges that her fourteen-day suspension was the result of discrimination and retaliation. Dkt. 33.

#### 1. Discrimination

"Title VII prohibits federal employers from discriminating against federal employees" based on their sex, race, color, or national origin. *Khowaja v. Sessions*, 893 F.3d 1010, 1014 (7th Cir. 2018) (citing 42 U.S.C. § 2000e-16). At this summary judgment stage, "all evidence . . . must be evaluated as a whole" and "[t]he legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the . . . proscribed factor

caused the [adverse action]." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Defendant argues that the designated evidence shows that Ms. Geng's fourteen-day suspension "was legitimate and non-discriminatory" because it was based on performance concerns. Dkt. 48 at 24. Ms. Geng responds that she was meeting the Navy's expectations and that other employees were not monitored in the same way she was. Dkt. 51 at 14–15. "The proper inquiry" for whether Ms. Geng met the Navy's expectations evaluates her "job performance through the eyes of her supervisor at the time." *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 574 (7th Cir. 2021).

Defendant has designated evidence that Ms. Geng was not meeting expectations. Her November 2017 evaluation asked her to improve "completing assigned tasking in a timely manner." Dkt. 45-25. Mr. Graber also consistently counseled Ms. Geng about her lack of productivity. *See* dkt. 45-24; dkt. 45-25; dkt. 45-27; dkt. 45-29; dkt. 45-33. He eventually required her to log her projects and hours in a "Task Tracker," which revealed that Ms. Geng was spending substantial "overhead" time on emails, breaks, and personal development, dkt. 45-29, and spent substantially more than the allotted time to complete her assignments, dkt. 45-33; dkt. 45-36. Indeed, when Mr. Graber proposed the fourteen-day suspension for "inattention to duty," he explained that Ms. Geng "spent a significant amount of time on items that were not related to [her] assigned work and . . . charged more than what was reasonably

8

required to complete these tasks." Dkt. 45-36 at 1. Ms. Carden agreed when she approved the suspension. Dkt. 45-38 at 4.

Ms. Geng responds that Mr. Graber rated her "Acceptable" on a 2018 evaluation and that his claims about her allotted hours "did not match the number of hours" actually allowed on the Task Tracker. Dkt. 51 at 5, 8, 14. But despite rating her "Acceptable," the 2018 evaluation again asked her to improve "completing assigned tasking in a timely manner." Dkt. 54-9 at 2–3. And even if the Task Tracker allotted Ms. Geng more hours than Mr. Graber calculated, *see* dkt. 54-2, she does not dispute that she substantially exceeded her allotted time for her tasks. *See* dkt. 51 at 14; dkt. 54 at 4. The designated evidence—"testimony . . . supported by documentary evidence"—therefore points to a suspension for poor performance that did not improve after several warnings. *Khungar*, 985 F.3d at 574–75.

Ms. Geng also has not shown that any similarly situated coworkers received better treatment. She argues that four coworkers had performance, productivity, or attendance concerns yet were not disciplined or required to use a Task Tracker. Dkt. 51 at 10, 15–16. But Ms. Geng bears the burden to show that a coworker is similarly situated, *see Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017), and she has designated evidence about the work performance of only Kate Hawkins, dkt. 54 at 6.[2] That designated evidence,

---

[2] Ms. Geng suggests that she would elicit additional evidence at trial, dkt. 51 at 10, 14–15, but Defendant's motion for summary judgment required Ms. Geng to "put [her] evidentiary cards on the table." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy.").

however, merely implies that Ms. Hawkins struggled with attendance, says that her "performance in supporting [a] project was subpar," and notes that she initially "fail[ed] to correct" the issues that Mr. Graber identified.  Dkt. 54-5 at 18.  The record therefore lacks "critical details" about Ms. Hawkins—it gives no "specifics of [the] alleged performance issues."  *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 927 (7th Cir. 2019); *see id.*  With only that vague evidence, Ms. Geng "cannot avoid a finding that the record lacks enough evidence to permit a jury to find in her favor."  *Rozumalski*, 937 F.3d at 927.

Moreover, while the designated evidence shows that Ms. Hawkins faced initial discipline—her telework agreement was cancelled, and she was required to document leave and have her ongoing work performance assessed—it does not show that Ms. Hawkins failed to respond to those steps or required further discipline.  *See id.*  Ms. Geng, by contrast, was suspended only after lesser measures did not resolve Mr. Graber's concerns about her performance.  *See Khowaja*, 893 F.3d at 1016; *Lauth*, 863 F.3d at 716 (holding that the plaintiff was "unable to demonstrate" that he was similarly situated when he "continuously pushed back on and disagreed with his supervisor's assessments" while the proposed comparator "demonstrated a willingness to correct the problems").  Ms. Geng therefore has not shown that she and Ms. Hawkins are "similar enough to eliminate confounding variables . . . so as to isolate the critical independent variable" of discrimination.  *Abrego v. Wilkie*, 907 F.3d 1004, 1013 (7th Cir. 2018).

10

Ms. Geng also has not designated evidence allowing a reasonable jury to find that a protected class—rather than documented performance concerns—was the real reason for her termination. *See Sandefur v. Dart*, 979 F.3d 1145, 1155 (7th Cir. 2020). She argues that Mr. Graber was biased against her because of her race and sex because he chose not to talk to her at a lunch in December 2012, emailed her a picture he took of her car parked crookedly in January 2017, and "set up a trap" to catch her falsifying her timesheet in June 2017. Dkt. 51 at 1–3. But that evidence does not point to a discriminatory motive "without reliance on speculation," so it cannot show a triable issue of fact. *Langenback v. Wal-Mart Stores*, 761 F.3d 792, 800 (7th Cir. 2014). The email, for example, was in response to Ms. Geng's email that she had completed a day-long driving improvement program and did not mention Ms. Geng's gender or race. Dkt. 45-9. Indeed, Ms. Geng admits that Mr. Graber never commented or joked about her race, color, or national origin. Dkt. 45-1 at 53–54 (Geng Dep.); *see Igasaki v. Ill. Dept. of Fin. & Prof. Reg.*, 988 F.3d 948, 958–59, 961 (7th Cir. 2021) ("We reiterate that a speculative inference does not an employment discrimination case make.").

In sum, "uncontroverted evidence" shows that Ms. Geng's work "was fraught with problems" and did not meet the Navy's legitimate expectations. *Ferrill v. Oak Creek–Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017). And despite Mr. Graber's efforts, Ms. Geng showed "persistent resistance to improving her performance, which was well documented." *Id.* at 501. Ms. Geng therefore has not designated evidence showing a triable issue of fact, and

Defendant is granted summary judgment on this claim.³  *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015) ("Summary judgment for the employer is proper where the employer provides undisputed evidence that the adverse employment action is based upon the employee's poor job performance."); *accord Igasaki*, 988 F.3d at 958–59.

### 2. Retaliation

"Title VII prohibits an employer from retaliating against an employee for . . . participating in an investigation of an unlawful employment practice." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) (citing 42 U.S.C. § 2000e-3(a)).  "To prevail on a Title VII retaliation claim, the plaintiff must prove that (1) [she] engaged in an activity protected by the statute; (2) [she] suffered an adverse employment action; and (3) there is a causal link between the protective activity and the adverse action." *Id.*

Here, Ms. Geng's EEO complaints are protected activity. *Id.* Defendant argues that no designated evidence supports a causal link between that activity and the fourteen-day suspension because Ms. Geng's suspension was instead based on performance concerns. Dkt. 48 at 26–29. Ms. Geng responds that shortly after the protected activity, Mr. Graber retaliated against her by requiring her to complete the Task Tracker, which was then used to justify the fourteen-day suspension. Dkt. 51 at 15–16; dkt. 54 at 8.

---

³ Ms. Geng does not argue that summary judgment is inappropriate under the *McDonnell Douglas* framework, *see* dkt. 51; dkt. 54, and that framework "is not particularly helpful" here because "the main issue is the plaintiff's job performance," *Khungar*, 985 F.3d at 574.

Ms. Geng's retaliation claim fails for the same reason as her discrimination claim—the evidence, viewed as a whole, shows performance concerns and "persistent resistance to improving," but not an improper motive. *Ferrill*, 860 F.3d at 501; *see Curtis*, 807 F.3d at 221. While Ms. Geng relies on timing, she admits that her fourteen-day suspension "was not proposed until approximately nine months" after her complaint, and that the task tracker was implemented two months before the suspension. Dkt. 51 at 15–16. That timing cannot support a triable issue of fact. *See Castro v. Devry Univ.*, 786 F.3d 559, 567–68 (7th Cir. 2015). And the Seventh Circuit has consistently upheld summary judgment on retaliation claims when the designated evidence shows that performance concerns—and not any improper motive—caused the employment action. *Ferrill*, 860 F.3d at 501; *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 885 (7th Cir. 2018) (a retaliation claim without evidence of pretext or meeting legitimate expectations "is fatally deficient"); *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) ("Perhaps most damningly, Boss' employers adduced evidence showing that he had failed to meet their legitimate expectations, thereby rebutting any presumption that their actions were taken in retaliation for Boss' EEOC case.").

In short, there is no evidence supporting a causal connection between Ms. Geng's EEO complaints and her suspension or showing a retaliatory

motive. *Lewis*, 909 F.3d at 871.[4] Defendant is therefore entitled to summary judgment on this claim.

### B. Claims Related to the MTRC Program

Ms. Geng alleges that she suffered discrimination and retaliation related to the MTRC program. Dkt. 33.

#### 1. Discrimination

As explained above, "Title VII prohibits federal employers from discriminating against federal employees" based on their sex. *Khowaja*, 893 F.3d at 1014 (citing 42 U.S.C. § 2000e-16). At this summary judgment stage, "all evidence . . . must be evaluated as a whole" and "the legal standard is simply whether the evidence would permit a reasonable factfinder to conclude that the . . . proscribed factor caused the [adverse action]." *Ortiz*, 834 F.3d at 765.

Defendant argues that Ms. Geng cannot show any discrimination connected to the MTRC program. Dkt. 48 at 31. Ms. Geng contends that she was qualified for the program, dkt. 54 at 8–9, and that an employee commented on her "tenacity," which is evidence of sex and race discrimination, dkt. 51 at 18.

The statement about "tenacity" that Ms. Geng relies was from one of the MTRC leaders at a mediation. Dkt. 45-1 at 91, 102–03 (Geng Dep.). Defendant argues that this statement is inadmissible under Federal Rule of Evidence 408

---

[4] Because the designated evidence does not support a causal connection, the Court does not address Defendant's argument that Ms. Geng did not exhaust this claim as to one of her EEO complaints. *See* dkt. 48 at 27–28.

14

because it was made during mediation. Dkt. 53 at 6–7; *see id.* at 103–04.[5]
Ms. Geng responds that the MTRC leader did not sign a "Mediation Consent form" so he does not count as a party and Rule 408 does not apply. Dkt. 54 at 4–5; *see* dkt. 52-1. Rule 408, however, makes certain evidence inadmissible "*on behalf of* any party," regardless of whether the statement was made *by* a party. Fed. R. Evid. 408(a) (emphasis added). And Rule 408 sweeps broadly— "statements made in settlement negotiations are inadmissible to prove liability on the underlying claim." *Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 540 (7th Cir. 2017). Since Ms. Geng seeks to use the comment for that purpose, it is inadmissible. *See id.*

Ms. Geng also has not shown that she was so qualified for the program that "there can be no dispute among reasonable persons of impartial judgment that [she] was clearly better qualified" than other applicants. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 404 (7th Cir. 2008). She argues that her education and international experience qualify her for the program, dkt. 54 at 8–9, but she does not designate evidence about other applicants and admits that she "did not even know the majority of the people who got selected," dkt. 51 at 18–19. With no triable issue of fact on this sex-discrimination claim, the Court "must respect the employer's unfettered discretion to choose among

---

[5] The mediation appears to have been an effort to resolve Ms. Geng's EEO complaint about the MTRC program, *see* dkt. 45-1 at 33, 102 (Geng Dep.), but that does not affect Rule 408's application, *See Alexander v. City of Evansville, In.*, 120 F.3d 723, 727–28 (7th Cir. 1997) (evidence of defendant's separate settlements with non-plaintiff employees was not admissible under Rule 408 to prove plaintiffs' case).

qualified candidates." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002).[6]

### 2. Retaliation

Defendant argues that Ms. Geng has not designated evidence of retaliation. Dkt. 48 at 32–35. Ms. Geng responds that she was retaliated against when an NCIS and an FBI officer contacted her. Dkt. 51 at 19.

Even if Ms. Geng's allegations are true, she has not designated evidence that can show a triable issue of fact. Her retaliation claim requires an adverse action, and discussions and warnings do not rise to that level. *See Crews v. City of Mt. Vernon*, 567 F.3d 860, 869 (7th Cir. 2009) ("Requiring '*material*' adversity is important . . . to discourage civil rights litigation over 'trivial harms.'"); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). Defendant is therefore entitled to summary judgment on this claim.[7]

### C. Hostile Work Environment Claim

"Title VII prohibits the creation of a hostile work environment" that is "so pervaded by discrimination that the terms and conditions of employment [are] altered." *Vance v. Ball State Univ.*, 570 U.S. 421, 426–27 (2013). To survive summary judgment on this claim, Ms. Geng "must present evidence demonstrating (1) the work environment was both objectively and subjectively

---

[6] The Court does not address Defendant's arguments that Ms. Geng has not shown an adverse employment action and cannot prevail because she did not apply for the program in October 2017. Dkt. 48 at 29–31.

[7] The Court does not address Defendant's argument that these allegations are not cognizable under Title VII because they implicate national security. Dkt. 53 at 7–8, 17.

offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Abrego*, 907 F.3d at 1015.

Defendant argues that Ms. Geng's feelings that she was harassed and allegations that she was closely monitored cannot satisfy the first element of a hostile work environment claim. Dkt. 48 at 25, 32–33. Ms. Geng responds that she had to frequently contact Mr. Graber about her workload, which was "torture" because of his "discrimination and harassment." Dkt. 51 at 11.

Ms. Geng has not designated evidence that can show an "objectively and subjectively offensive" work environment. *Abrego*, 907 F.3d 1004. In *Abrego*, the plaintiff argued that "his supervisors were 'short tempered,' 'hostile,' unfairly critical, and disrespectful" and that "he was 'subjected to excessive monitoring.'" *Id.* at 1015. But those "conditions are not objectively offensive, severe, or pervasive," so they "do not create a 'workplace . . . permeated with discriminatory intimidation, ridicule, and insult." *Id.* Ms. Geng has not designated evidence rising even to that level, so Defendant is entitled to summary judgment on this claim. *See id.* at 1016; *Boss*, 816 F.3d at 920 ("Any notion of a race-based hostile environment can be quickly dispatched. The record contains not a single racially offensive remark, email, or other hint of racial animus.").[8]

---

[8] Ms. Geng also argues that she was subjected to a hostile work environment when an NCIS and an FBI officer contacted her about her interest in the MTRC program. Dkt. 54 at 9. Ms. Geng does not explain how that event creates or is relevant to a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult." *Abrego*, 907 F.3d at 1015.

## IV.
## Conclusion

Defendant's motion for summary judgment is **GRANTED**.  Dkt. [45].

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 3/31/2021

                                                James Patrick Hanlon
                                                United States District Judge
                                                Southern District of Indiana

Distribution:

JIAYI GENG
947 S. Baldwin Dr.
Bloomington, IN 47401

Jackson Taylor Kirklin
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
taylor.kirklin@usdoj.gov